1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6 SAN JOSE DIVISION

7

8 ERIC OLSON,

Plaintiff,

9

10 v.

11 WORLD FINANCIAL GROUP
INSURANCE AGENCY, LLC, et al.,

12 Defendants.

13

Case No.   24-cv-00481-EJD

**ORDER GRANTING IN PART
MOTION TO COMPEL
ARBITRATION**

Re: ECF No. 31

14        Plaintiff Eric Olson ("Mr. Olson") brings claims against Defendants World Financial

15 Group Insurance ("WFG," "WFGIA," or "Defendant"), Robbie Day, and DOES 1-10 for

16 damages, injunctive relief, and declaratory relief relating broadly to Mr. Olson's prior affiliation

17 with WFG.  First Amended Complaint ("FAC"), ECF No. 27-1.

18        Before the Court is WFG's motion to compel Mr. Olson's claims to arbitration.  WFG's

19 Motion to Compel Arbitration ("Mot." or "Motion"), ECF No. 31.  The motion is fully briefed.

20 Mr. Olson's Opposition to Motion to Compel Arbitration ("Opp."), ECF No. 39; WFG's Reply in

21 Support of Motion to Compel Arbitration ("Reply"), ECF No. 43.  The Court heard oral argument

22 on the motion on May 2, 2024.

23        For the reasons set forth below, the Court GRANTS IN PART WFG's motion.

24 I.     **BACKGROUND**

25        A.     **The Parties**

26        The following factual background is taken from the complaint except if otherwise noted.

27 WFG is a multi-level marketing company that provides financial services via life insurance,

28 Case No.: 24-cv-00481-EJD
ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION
1

retirement strategies, and a variety of wealth-building strategies.  FAC ¶ 16.  When an agent signs on to become affiliated with WFG, they are encouraged to recruit additional agents, and they are compensated for sales of their recruits and any sales by any agent that is brought on by that recruit. *Id.* ¶ 17.  In or about 2003, Mr. Olson became affiliated with WFG and started to recruit agents. *Id.* ¶ 20.  Mr. Olson was very successful in building his teams.  *Id.* ¶ 30.  Mr. Olson signed an agreement with WFG ("the Agent Agreement") which included multiple provisions that Mr. Olson contends are against California law.  *Id.* ¶¶ 6, 20.

Around 2023, Mr. Olson "contemplated transferring his code" to Ms. Olson such that Ms. Olson would "step into his shoes and be in control of his hierarchy and collect the revenues that Mr. Olson was generating from the sales of the agents that were in his hierarchy."  *Id.* ¶ 42. Mr. Olson alleges that WFG terminated the program that allowed this strategy shortly after learning that Mr. Olson intended to sell his code to Ms. Olson.  *Id.* ¶ 44.  Mr. Olson then sought to sell his code to another agent, but WFG purported to terminate this program as well.  *Id.* ¶¶ 46, 48.

On January 22, 2024, Mr. Olson received a letter of termination from WFG warning Mr. Olson not to violate the provisions in the Agent Agreement.  *Id.* ¶ 53.  Mr. Olson alleges that WFG is using the provisions in the Agent Agreement to restrict Mr. Olson's ability to work at a new business.  *Id.* ¶ 61.  WFG has allegedly failed to pay Mr. Olson approximately $200,000 that is owed to him.  *Id.* ¶ 63.

Ms. Olson resigned in October 2023 and started a new company, Global Financial Impact, LLC ("GFI") to sell life insurance and other similar products.  *Id.* ¶¶ 66–67.  Mr. Olson alleges that Defendant Day and WFG "began mobilizing agents" to prevent WFG agents from leaving to join GFI.  *Id.* ¶ 69.

**B.**     **The Arbitration Agreement**

On February 27, 2023, Mr. Olson and WFG executed the Arbitration Agreement. Declaration of Troy A. Valdez, Ex. 1 ("Arbitration Agreement"), ECF No. 31-1 at 3.  The Arbitration Agreement states the following:

WFG and I agree to use binding arbitration as the means to resolve all disputes

United States District Court
Northern District of California

that may arise out of or relate to my relationship with WFG, including, but not limited to, any determination of my classification as an independent contractor. WFG and I each waive and relinquish our respective rights to bring a claim against the other in court and this waiver will be equally binding on any person who represents or seeks to represent WFG or me in a lawsuit against the other in court.

WFG and I agree to submit any claim, dispute, and/or controversy against the other to binding arbitration under the Federal Arbitration Act (FAA). This includes any such claims against WFG's brands, concepts, affiliates, subsidiaries, parents, related entities, owners, directors, officers, managers, employees, or agents. WFG and I agree the FAA applies to this Agreement. WFG and I also agree the scope of this Agreement includes all disputes, whether based on tort, contractor, or statute, as allowable under applicable law. This includes any claims whether they be based on state or federal law or regulation, equitable law, or otherwise, However, WFG and I agree a court may grant interim (temporary or permanent) injunctive relief to preserve the status quo or to prevent material, imminent harm pending arbitration.

Arbitration Agreement §§ 2–3.

### C.      Procedural History

#### 1.      The *WFG Action*

WFG brought the first of multiple complaints involving these parties on January 25, 2024. *World Fin. Group Ins. Agency v. Eric Olson*, No. 24-cv-00480-EJD (N.D. Cal.) (the "WFG Action").  WFG filed a complaint, originally in Santa Clara Superior Court, against the Olsons alleging that Mr. Olson breached his contract with WFG and misappropriated confidential business information.  The complaint includes seven causes of action for (1) breach of contract, (2) tortious interference, (3) civil conspiracy, (4) fraud, (5) unjust enrichment, (6) conversion, and (7) unfair competition in violation of California Business and Professions Code Section 17200.  In that complaint, WFG seeks injunctive relief, monetary damages, and attorneys' fees and costs.

On January 26, 2024, Mr. Olson removed the case to this Court.  On January 29, 2024, WFG filed a motion for temporary restraining order and a motion for expedited discovery.  *WFG Action*, ECF No. 17.  The Court denied the TRO in that case on February 22, 2024, and granted WFG's request for expedited discovery.  *WFG Action*, ECF No. 64.

On March 14, 2024, the Olsons filed a motion to dismiss.  *WFG Action*, ECF Nos. 79, 80.

United States District Court
Northern District of California

### 2.    The *Sandra Olson/GFI Action*

On January 25, 2024, Ms. Olson brought a complaint on behalf of herself and her company, GFI, alleging that her ability to compete with WFG was hampered by WFG's non-solicitation provision in the employment agreement she signed when she was employed with WFG.  *Sandra Olson v. World Fin. Group Ins. Agency*, No. 24-cv-00477-EJD (N.D. Cal.) (the "Sandra Olson/GFI Action").  She and GFI bring claims for declaratory and injunctive relief, alleging that WFG violated Cal. Bus. & Prof. Code, § 17200.  Ms. Olson and GFI also seek attorneys' fees and costs.

WFG filed a motion to compel Ms. Olson's claims to arbitration on March 22, 2024, arguing that Ms. Olson signed a Mutual Agreement to Arbitrate Claims in 2023 which requires that the claims asserted in Ms. Olson's lawsuit be submitted to binding arbitration.  On March 25, 2024, WFG also filed a motion to dismiss GFI's claims for failure to state a claim.  *Sandra Olson/GFI Action*, ECF No. 24.

### 3.    The *Eric Olson Action*

On January 26, 2024, Mr. Olson filed the present complaint against WFG bringing claims for (1) unfair competition in violation of Cal. Bus. & Prof. Code, § 17200, (2) tortious interference, (3) conversion, (4) breach of contract/covenant of good faith and fair dealing, and (5) declaratory relief.  WFG filed the present motion to compel arbitration in on March 22, 2024.  The motion is fully briefed.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the Arbitration Agreement between the Parties.  Arbitration Agreement § 1.  The FAA declares "that a written agreement to arbitrate ... 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract,'" and thereby establishes a "liberal federal policy favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (quoting 9 U.S.C. § 2).  When parties enter into an arbitration agreement, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall

Case No.: 24-cv-00481-EJD
ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION

1    direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been

2    signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Any doubts regarding the

3    scope of arbitrable issues should be resolved in favor of arbitration.  *Green Tree Fin. Corp. v.*

4    *Bazzle*, 539 U.S. 444, 452 (2003).

5           In determining whether to compel a party to arbitrate, the court must determine:

6    "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

7    encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir.

8    2013) (internal quotation marks and citation omitted).  Once it is established that a valid

9    agreement to arbitrate exists, the burden shifts to the party seeking to avoid arbitration to show

10   that the agreement should not be enforced.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531

11   U.S. 79, 92 (2000).

12   **III.    DISCUSSION**

13          WFG contends that Mr. Olson's claims must be compelled to arbitration because the

14   Arbitration Agreement is a valid, binding agreement that evidences a clear agreement to arbitrate,

15   and the Arbitration Agreement covers the dispute.  Mot. 5–7.  Mr. Olson responds that (1) the

16   Arbitration Agreement is unconscionable, (2) WFG has waived any right to arbitration, and

17   (3) Mr. Olson's requests for preliminary injunctive relief are exempt from arbitration.  Opp. 8–19.

18   Mr. Olson does not dispute that, if valid, the Arbitration Agreement would cover his claims, which

19   "arise out of or relate to [his] relationship with WFG."  Arbitration Agreement § 2.

20          **A.      Whether WFG Waived Its Right to Arbitrate**

21          Like other contractual rights, arbitration agreements may be waived.  *Armstrong v.*

22   *Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023).  "[T]he burden for establishing waiver

23   of an arbitration agreement is the same as the burden for establishing waiver in any other

24   contractual context." *Id.*  To prevail on a waiver claim, "the party asserting waiver must

25   demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts

26   inconsistent with that existing right." *Id.*  "There is no concrete test to determine whether a party

27   has engaged in acts inconsistent with its right to arbitrate"; instead, courts "consider the totality of

28   Case No.: 24-cv-00481-EJD
ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

1    the parties' actions." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471 (9th Cir. 2023) (citation

2    omitted).  The party opposing arbitration need not establish prejudice.  *Id.*

3        The parties agree that Mr. Olson satisfied the first prong, so the Court considers only

4    whether Mr. Olson has established that WFG's intentional acts were inconsistent with its right to

5    compel arbitration.  The Court evaluates whether WFG's actions holistically "indicate a conscious

6    decision ... to seek judicial judgment on the merits of the arbitrable claims, which would be

7    inconsistent with a right to arbitrate." *Id.* (quotations omitted).  Under Ninth Circuit precedent, "a

8    party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an

9    intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case

10    for a prolonged period of time in order to take advantage of being in court." *Id.* (quotations

11    omitted).

12        Mr. Olson argues that WFG has waived its right to arbitration by "affirmatively engag[ing]

13    in substantive litigation against Mr. Olson in three courts, including suing Mr. Olson in this Court

14    for compensatory and punitive damages based on the same events giving rise to this action."  Opp.

15    15.  Specifically, Mr. Olson points out that WFG's initial complaint against the Olsons—the *WFG*

16    *Action*—included claims for money damages and permanent injunctive relief without any mention

17    of arbitration of WFG's arbitration provision.  WFG then amended its complaint, again seeking

18    money damages and injunctive relief against Mr. Olson.  *WFG Action*, ECF No. 72.

19        WFG responds that it has not waived its right to arbitration because it has simply "engaged

20    in limited litigation with the sole purpose of obtaining interim injunctive relief" which is

21    "consistent with the [Arbitration] Agreement."  Reply 12.

22        Turning the Arbitration Agreement, the relevant section states the following:

23        2. WFG and I agree the FAA applies to this Agreement. WFG and I also agree the
         scope of this Agreement includes all disputes, whether based on tort, contract, or
24        statute, as allowable under applicable law. This includes any claims whether they
         be based on state or federal law or regulation, equitable law, or otherwise.
25        **However, WFG and I agree a court may grant interim (temporary or**
         **preliminary) injunctive relief to preserve the status quo or to prevent**
26        **material, imminent harm pending arbitration**.

27

28    Case No.: 24-cv-00481-EJD
      ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION
                                    6

Arbitration Agreement, § 2 (emphasis added).

WFG contends it has engaged in "surface level litigation," including seeking expedited discovery, aimed solely at obtaining the interim injunctive relief that the Arbitration Agreement allows.  Reply 13.  Moreover, WFG argues that it has consistently stated its intent to arbitration, including by notifying counsel on March 11, 2024, of its intent to move to compel arbitration (Declaration of Troy Valdez in Support of Reply, Ex. B, ECF No. 43-1), and alleging in its First Amended Complaint that "WFGIA brings its claims in this Court for the purpose of seeking injunctive relief to preserve the status quo and prevent imminent, irreparable harm, pending arbitration."  *WFG Action*, First Amended Complaint, ECF No. 72 ¶ 48.

In *Armstrong*, the Ninth Circuit found no waiver where the defendant pleaded arbitration as an affirmative defense and explicitly stated its intent to move to compel arbitration in multiple filings.  *Armstrong*, 59 F.4th at 1015.  The court also considered that the defendant "did not actively litigate the merits of the case for a prolonged period to take advantage of being in court" as evidenced by its decision to compel arbitration "within a year after [plaintiff] filed the complaint," and despite engaging in "limiting discovery requests" where the "very limited requests" were "related at least in part to [plaintiff's] non-arbitrable" claim.  *Id.*

Here, the Court does not find that WFG's filing of the *WFG Action* demonstrates that it acted inconsistently with exercising its right to arbitrate.  The Arbitration Agreement explicitly provides that the parties agree "a court may grant interim (temporary or preliminary) injunctive relief … pending arbitration."  Arbitration Agreement § 2.

Although WFG did not wait for a prolonged period after filing the complaint prior to moving to compel, the timing and motivation of WFG's motion gives the Court pause.  WFG filed the *WFG Action* on January 25, 2024.  That complaint was silent regarding any intent to arbitrate. The Court denied WFG's motion for a temporary restraining order on February 22, 2024.  WFG then amended its complaint on February 29, 2024, to include additional defendants, and to plead for the first time that it was seeking interim relief in this Court "pending arbitration."  WFG then moved to compel arbitration on March 22, 2024.  The fact that WFG "did not actively litigate the

merits of the case for a prolonged period"—just under two months—weighs against finding waiver. *Armstrong*, 59 F.4th at 1015. However, in the short period of time between when WFG filed its initial complaint to when WFG first stated its intent to arbitrate in the amended complaint and moved to compel arbitration in this matter, it received a negative ruling on its TRO and engaged in limited discovery.

Nevertheless, under the holistic approach, the totality of WFG's conduct does not demonstrate waiver. WFG waited under two months to move to compel arbitration. Although WFG did not limit its request in the original complaint to injunctive relief, it has not sought a ruling on the merits as to its claims. Rather, it filed a temporary restraining order—interim relief both parties concede is permitted under the Arbitration Agreement. The parties are actively engaged in expedited discovery for the limited purpose of supporting both sides' request for injunctive relief. *Armstrong*, 59 F.4th at 1016 (defendant's "limited discovery requests did not evince a decision to take advantage of the judicial forum"). And importantly, Mr. Olson has indicated he also intends to seek injunctive relief in this Court "as permitted by Section 2 of the Arbitration Agreement." Opp. 19. Mr. Olson's cited cases finding waiver are distinct because none appears to involve arbitration agreements that contained the explicit carveout for temporary relief present here. *See United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002); *see also ConWest Res., Inc. v. Playtime Novelties, Inc.*, No. C 06-5304SBA, 2007 WL 1288349, at *4 (N.D. Cal. May 1, 2007); *see also Kelly v. Pub. Util. Dist. No. 2 of Grant Cnty.*, 552 F. App'x 663 (9th Cir. 2014).

Accordingly, Mr. Olson has failed to establish that WFG acted inconsistently with exercising its right to arbitrate.

### B.    Whether a Valid Agreement to Arbitrate Exists

When assessing whether an arbitration agreement is enforceable, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied ... without contravening [the FAA]." *Heredia v. Sunrise Senior Living LLC*, No. 18-cv-00616-HSG, 2018 WL 5734617, at *2 (N.D. Cal. Oct. 31, 2018) (internal quotation marks omitted) (quoting

*Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  Thus, the "state-law principles that govern the formation of contracts" apply to this analysis.  *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010); *see also Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022) (stating that district courts apply "ordinary state-law principles that govern the formation of contracts" in analyzing arbitration agreements).  Mr. Olson contends that the Arbitration Agreement is unenforceable because it is both procedurally and substantively unconscionable. Opp. 7, 9.

### 1.    *Yeomans*

As an initial matter, Mr. Olson compares the Arbitration Agreement here to the agreement invalidated in a separate, wage and hour class action against WFG.  *Yeomans v. World Fin. Grp. Ins. Agency, Inc.* ("*Yeomans I*"), 485 F. Supp. 3d 1168, 1191 (N.D. Cal. 2020), *aff'd sub nom. Yeomans v. World Fin. Grp. Ins. Agency, LLC* ("*Yeomans II*"), 2021 WL 5356537, *1 (9th Cir. Nov. 17, 2021).  The Ninth Circuit affirmed the district court's finding that WFG's agreement in that case was both substantively and procedurally unconscionable.  *Yeomans II*, 2021 WL 5356537 at *1.  The Ninth Circuit found that plaintiffs there showed that "there was surprise in the contracting process," and "some of the terms were 'unreasonably favorable'" to WFGIA, "the more powerful party."  *Id.* (citing *Pokorny*, 601 F.3d at 997).

The arbitration agreement at issue in *Yeomans I & II* and the circumstances surrounding its formation are important here.  First, the plaintiffs in *Yeomans* contended that they received only the signature page of the agreement and "never actually saw or received the entire [agreement] or the provision containing the arbitration agreement" and "they did not know they were signing or agreeing to the [arbitration agreement]."  *Yeomans I*, 485 F. Supp. 3d at 1178.  The court observed that the record supported this, and it was "not evident from the file that what was being signed was a full contract."  *Id.* at 1179.  The court further distinguished situations where the full text of the arbitration agreement was readily available to the plaintiffs.  *Id.* at 1181.  However, the court concluded that at least four plaintiffs who completed the agreements on behalf of new recruits via DocuSign—which permits the user "clear opportunity to view all pages of the [agreement]"—and

Case No.: 24-cv-00481-EJD
**ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION**

1    who "continued work on behalf of Defendants" thereby "manifest[ing] acceptance of that

2    agreement" agreed to the terms of the arbitration agreement. *Id.* at 1183 (finding WFG failed to

3    demonstrate that one plaintiff had notice of the agreement where there were no allegations that he

4    "never saw the full [agreement]").

5         As to whether the agreement at issue in *Yeomans* was procedurally unconscionable, the

6    court found that it was a contract of adhesion because applicants "had a stark choice: either sign

7    the [agreement] as part of the sign-up packet, or reject the agreement and not take the job." *Id.* at

8    1185.  The court also recognized "an element of surprise" because (1) the named plaintiff initially

9    only received the signature page of the agreement, (2) the heading of the arbitration provision was

10   "in single-spaced, small-type font," (3) the "arbitration provisions use[d] undefined terms," and

11   (4) WFG did not provide a copy of the rules that would govern their arbitration proceedings. *Id.* at

12   1185–86.

13        The court also found substantive unconscionability because of three aspects of the

14   agreement. *First*, the agreement contained provisions that demonstrated the "one-sidedness" of

15   arbitration because the provisions gave WFG "the option of circumventing the arbitration process

16   for the claims they felt were important enough to them to go the extreme position of excluding

17   themselves from arbitration for those claims, while requiring all employees to submit those very

18   claims to the arbitration process." *Id.* at 1187.  *Second*, the agreement contained a mandatory

19   attorney fee and cost provision because plaintiffs "assert[ed] causes of action under California

20   Labor Code § 218.5(a), which contemplates imposition of attorneys' fees on a losing plaintiff only

21   where the court finds that the employee brought the court action in bad faith." *Id.* at 1188 (the

22   attorneys' fees "provision undermines the balance of the risk of fee shifting prescribed by statute

23   and can have a substantial chilling effect on plaintiffs seeking to vindicate their rights"). *Third*,

24   the agreement's "requirement to litigate all claims in the state of Georgia and to apply Georgia

25   law" was found to be substantively unconscionable because it was "unduly one-sided such that it

26   would serve as a deterrent to litigants who otherwise do not have the means to litigate in a foreign

27   state." *Id.*

28   Case No.: 24-cv-00481-EJD
     ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION
     10

United States District Court
Northern District of California

1    The Court rejects Mr. Olson's argument that *Yeomans* is dispositive and mandates a

2  finding of unconscionability here.  Since that case, WFG updated its Arbitration Agreement.  The

3  Arbitration Agreement is now presented separately from the broader Agent Agreement.  It no

4  longer includes a Georgia choice-of-law provision for "those operating in California," and it is

5  printed in larger font.  Arbitration Agreement § 19.  Unlike the plaintiffs in *Yeomans*, Mr. Olson

6  does not dispute that he received the agreement, nor that he signed the Arbitration Agreement as

7  an independent contractor.  Thus, the Court does not find that *Yeomans I* and *Yeomans II* mandate

8  denying WFG's motion, and the Court will proceed to evaluate unconscionability.

9                  **2.       Unconscionability**

10    "Under California law, a contract must be both procedurally and substantively

11  unconscionable to be rendered invalid," and courts "utilize[ ] a sliding scale to determine

12  unconscionability—greater substantive unconscionability may compensate for lesser procedural

13  unconscionability."  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).

14  Mr. Olson contends the Arbitration Agreement is both procedurally and substantively

15  unconscionable.

16    Procedural Unconscionability.  "Procedural unconscionability concerns the manner in

17  which the contract was negotiated and the respective circumstances of the parties at that time,

18  focusing on the level of oppression and surprise involved in the agreement."  *Chavarria*, 733 F.3d

19  at 922 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) and

20  *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 121–22 (Cal. Ct. App. 1982)).  Oppression

21  is measured by the weaker party's absence of choice and unequal bargaining power that results in

22  "no real negotiation."  *Id.* (internal quotation marks omitted) (quoting *A & M Produce*, 186 Cal.

23  Rptr. at 122).  Surprise is measured by "the extent to which the contract clearly discloses its terms

24  as well as the reasonable expectations of the weaker party."  *Id.* (citing *Parada v. Super. Ct.*, 98

25  Cal. Rptr. 3d 743, 757 (Cal. Ct. App. 2009)).

26    Mr. Olson argues that the Arbitration Agreement is procedurally unconscionable because

27  (1) it is a contract of adhesion, (2) it is "oppressive" because it prevented "users" from shopping

28  Case No.: 24-cv-00481-EJD
ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

1    around or meaningfully withholding consent before accepting the terms of the agreement, and

2    (3) it is unfairly surprising because the Arbitration Agreement "is tucked away near the end of the

3    packet, between financial and authorization forms."  Opp 7–9.

4           WFG responds that Mr. Olson was a party to the Arbitration Agreement "without any

5    objection" for 20 years, and just because the agreement was "standardized in form" does not

6    establish adhesion.  Reply 3.  The Court agrees with WFG.  The "fact that the arbitration

7    agreement is an adhesion contract does not render it automatically unenforceable as

8    unconscionable. Courts have consistently held that the requirement to enter into an arbitration

9    agreement is not a bar to its enforcement."  *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App.

10   4th 165, 179 (2015).  Instead, "[t]he procedural element focuses on two factors: oppression and

11   surprise."  *Zullo v. Superior Court*, 197 Cal. App. 4th 477, 484 (2011) (internal citations omitted).

12   Oppression "arises from an inequality of bargaining power which results in no real negotiation and

13   an absence of meaningful choice," and surprise "involves the extent to which the supposedly

14   agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking

15   to enforce the disputed terms."  *Id.* (internal citations omitted).

16          With respect to whether the Arbitration Agreement was oppressive, Mr. Olson describes an

17   inequality of bargaining power because WFG required agents to sign the agreement each year, and

18   agents "who took too much time to consider that year's new terms risked real pecuniary harm—as

19   WFG suspended agents who were tardy in renewing their packet."  Opp. 9.  Mr. Olson's

20   declaration states that he "understood" WFG would not negotiate with him.  Declaration of Eric

21   Olson ¶ 4, ECF No. 39-3.  But beyond this conclusory statement, this understanding is otherwise

22   unsupported and conflicts with other statements in the record which suggest Mr. Olson is a

23   sophisticated businessperson capable of negotiating.  *See, e.g.*, FAC ¶ 1 (Mr. Olson worked with

24   WFG for twenty years and built a $200 million per year insurance business comprise of over

25   20,000 agents).  Given Mr. Olson's tenure with the company and without any evidence that

26   Mr. Olson attempted to negotiate—or that WFG refused to entertain questions from Mr. Olson—

27   the Court does not find that Mr. Olson has demonstrated an inequality of bargaining power such

28   Case No.: 24-cv-00481-EJD
     **ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION**
                                    12

United States District Court
Northern District of California

1    that the Arbitration Agreement was oppressive.  *See Streedharan v. Stanley Indus. & Auto., LLC*,

2    No. 22-55999, 2023 WL 9067587, at *3 (9th Cir. Jan. 4, 2023) (party opposing arbitration did not

3    meet his burden to show procedural unconscionability where he "offer[ed] no evidence to show

4    that he was ever *prevented* from negotiating" and instead where he "relie[d] solely on his

5    subjective *perception* that he did not have the opportunity to negotiate any of the terms of the

6    agreement") (emphasis in original) (quotations omitted).

7           As to surprise, Mr. Olson analogizes to *Yeomans I*, which found surprise present where "a

8    reader seeking to make sense of the arbitration provision would have to flip through a separate

9    document in order to understand the extent to which they would be bound."  Opp. 8 (citing

10   *Yeomans I*, 485 F. Supp. 3d at 1186).  While recognizing that since *Yeomans I & II*, WFG

11   separated the Arbitration Agreement out of the Agent Agreement into a standalone document,

12   Mr. Olson still contends that the Arbitration Agreement's terms are manipulated to obscure their

13   significance because they are "tucked away near the end" of the Agent Agreement packet,

14   "between financial authorization forms."  Opp. 9.  The Court finds that the terms of the arbitration

15   are not so "hidden" as to find surprise.  In addition to relocating the arbitration provision into a

16   standalone document titled "Mutual Agreement to Arbitrate Claims Agreement," the new

17   Arbitration Agreement at issue here required Mr. Olson to separately sign off on the terms and is

18   presented with legible font size with emphasis using bolding and underlines.  This is distinct from

19   the agreement in *Yeomans*, which involved single-spaced, size 9-point font and which plaintiffs

20   were not presented with the full agreement until when they recruited others.  *Yeomans I*, 485 F.

21   Supp. 3d at 1186 (finding surprise).

22          Accordingly, Mr. Olson has not demonstrated that the Arbitration Agreement is

23   procedurally unconscionable.  As noted above, under California law, "a contract must be both

24   procedurally *and* substantively unconscionable to be rendered invalid."  *Chavarria*, 733 F.3d at

25   922 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000))

26   (emphasis added).  "Absent any evidence of procedural unconscionability, [the Court] need not

27   reach the issue of substantive unconscionability."  *Streedharan*, 2023 WL 9067587, at *3.

28   Case No.: 24-cv-00481-EJD
     ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION
                                             13

**C.      Prejudice**

Mr. Olson argues that WFG's motion should be denied for the separate, independent reason that "WFG is estopped from compelling arbitration because Mr. Olson would be prejudiced by WFG's inconsistent conduct if the motion were granted." Opp. 15.  If WFG's motion is granted, Mr. Olson contends he would be forced to relitigate key issues in the case, including "the enforceability of WFG's Restrictive Covenants under § 16600." *Id.* at 18.

The Court finds that any purported prejudice does not defeat the Court's finding that a valid arbitration agreement exists, and the Arbitration Agreement covers the dispute.  The Court's ruling on WFG's motion for temporary restraining order found that WFG had not established a likelihood of success on the merits based on the evidence presented at the time of the motion.  And the expedited discovery taken to date is mutual; the Court understands that both parties intend to use the discovery in support of the parties' respective forthcoming requests for preliminary injunction.

**IV.     CONCLUSION**

For the foregoing reasons, WFG's motion is GRANTED.  In light of Mr. Olson's representations that he intends to seek preliminary injunctive relief, which both parties agree are exempt from the Arbitration Agreement, the Court sets a status conference on September 26, 2024, at 10:00 a.m.  The parties are ORDERED to submit a joint statement no later than August 23, 2024, regarding their proposal on which claims should be sent to arbitration and which claims should remain in this Court pursuant to the Court's ruling above.  The parties should also comment on the status of each side's intention to seek a preliminary injunction.

**IT IS SO ORDERED.**

Dated: July 19, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 24-cv-00481-EJD
ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION
14